## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **JAMES L. KROUSE, and** | ) | |
| **MELODY M. KROUSE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **-vs-** | ) | **Case No. 3:25-cv-967** |
| | ) | |
| **AMERICAN BUILDING** | ) | |
| **CONTRACTORS, Inc.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COME Plaintiffs, James L. Krouse and Melody M. Krouse, by and through their attorney, Ronald S. Langacker of Langacker Law, and for their Complaint against Defendant, American Building Contractors, Inc., hereby state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

2. Plaintiffs, a married couple, are citizens of Eau Claire, Wisconsin. Defendant American Building Contractors, Inc. ("ABC") is a foreign business corporation organized under the laws of Minnesota, with its principal place of business being Burnsville, Minnesota.

3. The amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000), as Plaintiffs seek compensatory damages, statutory multiple damages, and attorney's fees for losses well in excess of that amount.

4. Venue is proper in the Western District of Wisconsin under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

5. Plaintiffs, James L. Krouse and Melody M. Krouse, are the owners of residential property in Eau Claire, Wisconsin that is the subject of the contract with Defendant.

6. Defendant, ABC, is a foreign corporation engaged in the business of residential home improvements and storm damage repairs. At all relevant times, ABC marketed, offered, and provided home repair and remodeling services to consumers in Wisconsin, including to Plaintiffs.

## ALLEGATIONS COMMON TO ALL COUNTS

7. On or about May 17, 2025, Plaintiffs entered into a written contract with ABC for home improvement services on their residence in Eau Claire, Wisconsin. The work was to repair damage from a recent hailstorm and in addition to repairing the roof, included necessary repairs to the siding, gutters, downspouts, and soffits (Exhibit A).

8. The contract provided that the price of the work would be based on the insurance claim proceeds. Specifically, it stated that the "price approved by the insurance provider must be acceptable to [ABC]; the accepted amount becomes the initial agreed amount with the insurance provider." It further stated that no modification to the contract would be binding on ABC unless in writing and signed by an authorized representative.

9. On May 28, 2025, Plaintiffs received the initial written claim settlement and discovered that the insurer would not cover depreciation and had limited coverage, resulting in a significant shortfall in funds for full replacement. The insurer's estimate set the actual cash value at $15,715.60, whereas the full replacement cost of the necessary work was approximately $28,076.49 ($22,523.40 for the roof and $5,553.09 for the siding and related exterior items). Roughly half of the total cost was not initially covered due to depreciation holdback or

policy limits.

10. On May 29, 2025, Plaintiffs immediately informed ABC's sales representative, Jake Semling ("Semling") of the insurance shortfall. Mr. Semling responded that he would submit the matter to ABC's estimating department and discuss it with the insurance adjuster.

11. On June 2, 2025, Semling contacted Plaintiffs via text message explicitly stating they "would not owe anything beyond what the insurance covered," emphasizing that aside from the deductible, "there would be no additional out-of-pocket expenses" for the repairs, including the gutters, soffits, and siding. This message was intended to assure Plaintiffs that ABC would complete the entire scope of work for the amount the insurer was paying, without further payment from Plaintiffs except their policy deductible.

12. Relying on Semling's representation and believing that ABC had agreed to perform all necessary repairs from the insurance proceeds available, Plaintiffs agreed to move forward and allow ABC to commence work under the contract. Shortly thereafter, ABC began the roof replacement, which was completed prior to June 20, 2025.

13. On June 24, 2025, after completion of the roof, Plaintiffs learned definitively that their insurance claim would cover only $15,715.60 (approximately half) of the total repair of the roof, learning their insurance adjuster had never agreed with ABC to pay the full replacement cost. Their adjuster advised Plaintiffs their insurance had never agreed to pay the full replacement cost.

14. Subsequently Semling acknowledged this "payment discrepancy" and said ABC's estimating department would "look into" why the insurance payout was so low. In truth, there was no surprise – the insurer had indicated from the start that it was not covering depreciation. Thus,

3

the shortfall existed from the outset, and Semling's June 2 statement that insurance would cover everything (beyond deductible) was false.

15. Following completion of the roof, ABC refused to perform the remaining work under the contract (siding, gutters, soffits, etc.) and effectively abandoned the project.

16. Over the next several weeks, ABC, through its agents, refused to proceed with replacing the siding and other exterior elements unless Plaintiffs agreed to pay the uncovered depreciation amount out-of-pocket. ABC proposed certain "solutions" for financing this amount–for example, encouraging Plaintiffs to take a loan through ABC's financing partner–but Plaintiffs declined, as this was contrary to the agreement/representation that they would not owe additional money. Plaintiffs insisted ABC honor the original understanding—that the work would be done for what insurance would pay.

17. On July 31, 2025, Defendant's representative expressly informed Plaintiffs that ABC would not complete the remaining work on the home. ABC stated it was "refus[ing] to complete the remaining portion of the home," abandoning the project without finishing the siding, gutters, and other contracted items.

18. This email amounted to ABC's repudiation and material breach of the contract. At that point, the contracted work was left incomplete: the old, hail-damaged siding was still on three sides of the house, none of the gutters and downspouts had been replaced, and related trim (fascia/soffit) was left incomplete– despite ABC's contractual obligation to do so.

## COUNT I
### (Breach of Contract)

19.  Plaintiffs repeat and re-allege all paragraphs in this Complaint as if fully set forth herein.

20. The May 17, 2025 agreement between Plaintiffs and ABC is a valid, binding contract for home improvement services in exchange for payment.

21. Plaintiffs did everything required of them under the contract except to the extent that Defendant's acts or omissions excused further performance.

22. Defendant, ABC, materially breached the contract by failing to perform the agreed-upon scope of work in full. Specifically, ABC abandoned the project and refused to install the new siding, gutters, downspouts, and related exterior components it had agreed to replace. This non-performance was without legal justification.

23. As a direct and proximate result of the conduct described above, Plaintiffs have sustained monetary damages, including incidental and consequential damages, punitive damages, pecuniary losses, as well as attorneys' fees and costs.

## COUNT II
### (Intentional and/or Negligent Misrepresentation)

24.  Plaintiffs repeat and re-allege all paragraphs in this Complaint as if fully set forth herein.

25. Defendant, by and through its agent(s), made false representations of fact to Plaintiffs before and at the time the Contract was formed.

26. Specifically, ABC represented the total cost of the project to Plaintiffs would be nothing more than their $1,000 deductible, with the insurance company covering all other costs. This representation was made via explicit statements, both oral and written. ABC also implicitly represented that it would perform all necessary repairs for the insurance proceeds–for instance, by including siding and gutters in the contract scope, and never indicating any exclusions or additional charges.

27. Plaintiffs justifiably relied on ABC's representations.

28. Defendant's representations were knowingly false and made with the intent to induce Plaintiffs to rely on them and enter into the agreement.

29. As a direct and proximate result of the conduct described above, Plaintiffs have sustained

monetary damages, including incidental and consequential damages, punitive damages, pecuniary losses, as well as attorneys' fees and costs.

## COUNT III
### (Violation of Wisconsin Statute §100.18-Deceptive Trade Practices)

30.  Plaintiffs repeat and re-allege all paragraphs in this Complaint as if fully set forth herein.

31. Wisconsin Statutes Annotated §100.18 makes it unlawful to make any representation or statement of fact in connection with the sale of any merchandise that is "untrue, deceptive or misleading."

32. In violation of Wis. Stat. § 100.18, Defendant made false, misleading and deceptive statements and representations for the purpose of deceiving the Plaintiffs by representing they wouldn't owe anything beyond what insurance paid, and that Defendants would repair and replace the necessary damage to the siding, gutters, and soffits.

33.  Defendant made that representation with the intent to induce Plaintiffs to enter into or remain in a contract for ABC's services.

34.  Plaintiffs relied on the misrepresentation and as a result, were induced to contract with ABC.

35.  As a direct and proximate result of the conduct described above, Plaintiffs have sustained monetary damages, including incidental and consequential damages, punitive damages, pecuniary losses, as well as attorneys' fees and costs.

## COUNT IV
### (Violations of Wisconsin Admin. Code ATCP 110
### [Home Improvement Trade Practices] and Wis. Stat. §100.20(5))

36.  Plaintiffs repeat and re-allege all paragraphs in this Complaint as if fully set forth herein.

37. Defendant's conduct as described violated the Wisconsin's Deceptive Trade Practices Act, §100.18(1). This statute makes it unlawful for any firm, with intent to induce the public to

enter into a contract for services, to make any statement or representation to the public that is untrue, deceptive, or misleading.

38. ABC's transactions with Plaintiffs are "Home Improvement" transactions within the meaning of Wis. Admin. Code Chapter ATCP 110.

39. A violation of ATCP 110 is enforceable via Wis. Stat. §100.20(5), which provides a private right of action for double damages and attorney's fees.

40. Defendant committed multiple prohibited trade practices under ATCP 110.02, including but not limited to:

   a. Misrepresenting that the insurance payment was the full amount the Plaintiffs would have to pay. (ATCP 110.02(6)(g));

   b. Failing to disclose the contract conditions in a meaningful way, and/or omitting a material fact within the agreement. (ATCP 110.02(6)(f));

   c. Making false promises about cost and by delaying or withholding performance as a tactic to try to extract more money (ATCP 110.02(11);

   d. Failing to provide to Plaintiffs with an agreement which included a total price, an adequate description of the work, start and end dates, and imposing an additional charge without a proper written change order in violation of ATCP 110.05; and

   e. Accepting payment for services not provided, in violation of ATCP 110.02(7)(b).

WHEREFORE, Plaintiffs, James L. Krouse and Melody M. Krouse, respectfully request that this Court enter the following relief:

A. An award of damages in an amount to fully compensate Plaintiffs for the losses caused by Defendant's conduct;

B. An award of twice the amount of Plaintiffs' pecuniary loss pursuant to Wis. Stat. §100.20(5)

for Defendant's violations of ATCP 110;

C.  An award of punitive damages in an amount sufficient to punish Defendant for its intentional misrepresentations and deter such conduct;

D.  An order requiring Defendant to pay Plaintiffs' reasonable attorneys' fees, costs, and disbursements incurred in this action, as provided by Wis. Stat. §100.20(5) and any other applicable law;

E.  An award of pre-judgment interest on liquidated sums from the date of loss, and post-judgment interest at the legal rate until the judgment is satisfied; and

F.  For all further relief the Court deems equitable and just.


JAMES L. KROUSE
MELODY M. KROUSE
PLAINTIFFS

By: /s/Ronald S. Langacker
Ronald S. Langacker #6239469
Langacker Law, Ltd.
210 N. Broadway Ave.
Urbana, Illinois 61801
(217) 954-1025
ron@langackerlaw.com